[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**February 2, 2004**
**THOMAS K. KAHN**
**CLERK**

No. 02-16154

D. C. Docket No. 00-01654 CV-ORL-22

WILLIAM DWAYNE YOUNG,

Plaintiff-Appellant,

versus

CITY OF PALM BAY, FLORIDA,
PAUL RUMBLEY, in his individual capacity,
DANTE CRISTOFARO, in his individual
capacity,

Defendants-Appellees.

————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————

**(February 2, 2004)**

Before EDMONDSON, Chief Judge, COX, Circuit Judge, and PAUL[*], District
Judge.

---

[*]Honorable Maurice M. Paul, United States District Judge for the Northern District of Florida,
sitting by designation.

EDMONDSON, Chief Judge:

Plaintiff-appellant William D. Young appeals the district court's order granting defendants' motions for summary judgment on all counts. After four extensions of time, plaintiff's counsel still failed to submit timely memoranda in opposition to the motions. The district court refused to grant a fifth extension of time or to accept plaintiff's untimely filings. After a thorough review of defendants' motions and supporting affidavits and of the record properly before it, the district court concluded that defendants were entitled to summary judgment. We affirm.

I.

We review a district court's grant of summary judgment de novo, viewing the facts -- as supported by the evidence in the record -- and reasonable inferences from those facts in the light most favorable to the nonmoving party. Info. Sys. and Network Corp. v. City of Atlanta, 281 F.3d 1220, 1224 (11th Cir. 2002). Summary judgment is only proper where no genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510, 477 U.S. 242, 248 (1986). If a reasonable jury could not find in favor of the nonmoving party, no genuine

issue of material fact does exist; and summary judgment is proper. <u>Beal v. Paramount Pictures Corp.</u>, 20 F.3d 454, 459 (11th Cir. 1994). A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment. <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997). As Fed.R.Civ.P. 56(e) states, "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

A review of the record properly before the district court convinces us that summary judgment for defendants was warranted on all counts. Excluding consideration of the untimely memoranda in opposition to summary judgment, plaintiff has failed to meet his burden of showing genuine issues exist for trial. We now turn to whether the district court properly excluded said memoranda or whether it abused its discretion in doing so.

II.

Before we examine whether the district court abused its discretion by not granting plaintiff a fifth extension of time and by not considering plaintiff's untimely memoranda and supporting evidence, a discussion of the relevant procedural posture, including the earlier extensions of time, is useful.

A.

The Case Management and Scheduling Order issued by the district court on 27 March 2001, set a due date of 31 May 2002 for all dispositive motions, with trial scheduled to begin 1 October 2002. It cautioned that "[i]n light of the district court's heavy felony trial calender, at least four months are required before trial to receive memoranda in opposition to a motion for summary judgment, and to research and resolve the dispositive motion sufficiently in advance of trial." On 31 May 2002, all defendants timely moved for summary judgment.

On 10 June 2002, plaintiff's counsel, Mr. Tietig, requested his first motion for enlargement of time in which to respond to defendants' motions until 8 July 2002. It was unopposed. He gave three reasons for the extension request. First, he said that the reporting service would not be able to transcribe the depositions required for plaintiff's response until 17 June 2002: three days after the response

4

would be due.  Second, plaintiff's counsel "would have several quiet and uninterrupted weekends and Independence Day, besides regular workdays, to devote to the lengthy and complex statements of fact and memoranda of law in Mr. Young's responses." Third, "because of repetitive motion syndrome/arthritis, [he] must pace himself on using the computer keyboard needed for his reading, writing, and researching." On 12 June 2002, the district court gave a stamp of approval to the extension.

On 21 June 2002, Mr. Tietig requested an additional (again unopposed) extension until 22 July 2002.  He said that the parties had reached a tentative settlement on 14 June 2002, subject to certain prerequisites, but that he would not know if the settlement would be firm until the end of June or early July.  Because the response to defendants' motions "would require over 150 hours of time," and Mr. Tietig did not want to devote that amount of time to a response that could become moot, he made the request.  On 2 July 2002, the district court again granted approval of the extension request.

On 12 July 2002 plaintiff's counsel requested his third unopposed motion for an enlargement of time until 3 August 2002.  He said that further mediation was needed, and the earliest they could reconvene would be 17 July 2002.  Again, because Mr. Tietig did not want to devote time to working on the response to

defendants' motions for summary judgment until it was clear no settlement would arise, he asked for another extension. On 15 July 2002, the district court granted an extension in part, but only until 24 July 2002, because "[t]he extension requested will not afford the court sufficient time to review the submissions and research the issues presented prior to the trial term." The district court stated that "[n]o further extensions of any deadlines will be granted in this matter."

In spite of the district court's warnings, Mr. Tietig filed a fourth motion on 23 July 2002. He sought a continuance of 30 days for all dates in the case, including trial. He said he did so given the district court's indication that no additional extensions to respond to the motion for summary judgment would be granted because that would leave insufficient time for review before trial. Counsel, acknowledging that the district court said no further extension was to be granted, claimed that a further extension was needed because mediation was still ongoing and -- chiefly -- because his wife (also his co-counsel) was ill with kidney stone pains, a flu, and a bronchial infection, which made it impossible for her to assist him. Mr. Tietig is blind, and his wife helps him review documents and exhibits.

On 29 July 2002, the district court granted the motion in part, extending the deadline to serve and to file responses to the defense summary judgment motions

until 23 August 2002, but denied the motion to extend any other date. In addition, the district court wrote, in bold letters, that "[p]laintiff's counsel are warned: upon pain of sanctions, they had better start meeting deadlines in this and other cases." The court noted that it "has grown weary of accommodating this law firm's seeming inability or unwillingness to meet court-imposed deadlines."[1] Also, the district court required Mr. Tietig to show cause in writing why he should not be sanctioned for representing that his co-counsel was too ill to work on this case "prior to, and since, 15 July 2002": she had appeared for a pretrial conference in another case on 18 July 2002.

On 7 August 2002, Mr. Tietig filed his response to the order to show cause. He explained that his wife had been too sick to perform thought-intensive work (except for relatively mechanical tasks) since 10 July 2002, although she attempted to do so, including attending the pretrial conference for the other case. Mr. Tietig stated that he did not mislead the court and that, to the contrary, "it seems that any law firm wishing to mislead this Court would have been superficially consistent, smooth, and covert by using the same reason throughout and by not appearing at the courthouse." He said that "many traumatic and

_____

[1] The district court noted that in another case in which Mr. Tietig appeared before the same judge, Mr. Tietig requested repeated extensions and appeared to be incapable of meeting a deadline.

catastrophic events have happened in the lives of Mr. and Mrs. Tietig over the last year, and it is their sincere hope that with these events behind them, they will not be required to request a significant number of extensions in the future." Also, Mr. Tietig suggested that he be given an automatic extension of time for his filings or that the mediator be given the power to grant extensions if the parties think that the case is close to being settled.

On 16 August 2002, the district court determined that no sanctions would be imposed against Mr. Tietig because of the "many traumatic and catastrophic events." But, the district court noted that Mr. Tietig came "perilously close to being sanctioned" and that he should take greater care in the future not to create a misleading impression. The district court rejected Mr. Tietig's procedural suggestions; the court said "the undersigned judge has learned through hard experience that an overly liberal policy of extending case management deadlines, even with the consent of all counsel, unnecessarily prolongs final resolution of lawsuits and complicates trial scheduling."

Despite the clear indication that the district court intended to enforce its deadlines, Mr. Tietig in a night-box filing again moved to extend the time to reply to defendants' motions for summary judgment on Friday, 23 August 2002: the last day of the extension the court had already granted. He requested an extension

until Monday, 26 August 2002: a 3-day extension.[2] Mr. Tietig, in explaining his request, said that his wife had not fully recovered and that, therefore, they were unable to finish the response in time. On 26 August 2002, plaintiff's counsel finally filed the response to the defendants' motions for summary judgment; defendants' motions were filed nearly 3 months earlier.

On 27 August 2002, the district court denied plaintiff's motion to extend time, stressing that there had already been four extensions granted and good cause had not been shown for the fifth request. The district court indicated that -- given the procedural posture in this case with the multiple extensions and warnings that no further extensions would be granted -- "counsel should have gone to extraordinary lengths to ensure that their summary judgment opposition materials were timely filed. They did not do so; their filings were three days late." The court pointed out that plaintiff's counsel had been shown lenity, being granted a fourth extension even after presenting a misleading argument to support the request. The court further noted that, although counsel was seemingly having difficulty diligently prosecuting their existing cases, they continued to file new lawsuits before the court. Plaintiff's motion was denied; and all documents filed on 26

---

[2]The Case Management and Scheduling Order, established on 27 March 2001, specifically states that the prescribed time in which to respond to a party's motions with memoranda in opposition *includes* intermediate Saturdays, Sundays, and specified legal holidays.

August 2002 were treated as untimely and, thus, stricken from the record. The court would only consider, in deciding the motions for summary judgment, those documents already in the record before and including 23 August 2002.

Plaintiff's counsel then filed a motion on 29 August 2002, requesting a two-month continuance of the trial, stating that "[a]lthough undersigned counsel recognizes and respects this Court's frustration with the extensions in this and other cases, it is proving physically impossible for the lawyers in this law firm to meet the trial schedule in this case."

On 3 September 2002, Mr. Tietig filed a motion to file response to defendants' motions for summary judgment out of time for excusable neglect. Counsel trivialized the issue of the late filing, stating that it had only been turned in "one-and-a-half [business] hours late." He said that he could not get another lawyer to assist on the case because the case was too complicated, and it would take too long to get a new lawyer up to speed. Also, he said that he and his wife had "neither the time nor the resources to find and pay for an attorney to assist in their cases." He reiterated that his wife was sick and that, therefore, it would take him longer to do on his own what she could have done for him, if she had been well. On 4 September 2002, the district court denied the motion, stating: "There certainly was neglect, but it was by no means excusable."

The district court signed the order granting summary judgment to all three defendants on 8 October 2002, and the case was closed. On 5 November 2002, plaintiff's counsel filed a notice of appeal.

B.

Mr. Tietig argues that the district court abused its discretion by denying a fifth extension and by refusing to consider the untimely responses to defendants' motions for summary judgment. We cannot agree.

When we review a district court's decision under the abuse of discretion standard, our review is limited; and we give the court "considerably more leeway than if we were reviewing the decision de novo." Cason v. Seckinger, 231 F.3d 777, 786 (11th Cir. 2000). The district court has a range of options; and so long as the district court does not commit a clear error in judgment, we will affirm the district court's decision. In re Rasbury, 24 F.3d 159, 168 (11th Cir. 1994); see Will v. Calvert Fire Ins. Co., 98 S.Ct. 2552, 2559, 437 U.S. 655, 665-66 (1978)

("Where a matter is committed to the discretion of a district court, it cannot be said that a litigant's right to a particular result is 'clear and indisputable.'").

Here, the district court had a range of options which included refusing to consider untimely filings. This option is the one that the court chose, and we cannot say that the district court clearly erred in making such a decision. The court repeatedly warned plaintiff's counsel. But counsel seems to have not taken the warnings seriously: lightly dismissing the concerns and needs of the court, the opposing parties and counsel, and the system of justice.

The district court was generous. The district court granted four extensions of time -- one of which was granted after a warning that no further extensions would be granted and before receiving the ordered response to show cause why counsel should not be sanctioned for misrepresenting to the court Mrs. Tietig's continued assistance, albeit part-time, while ill.

In the courts, there is room for only so much lenity. The district court must consider the equities not only to plaintiff and his counsel, but also to the opposing parties and counsel, as well as to the public, including those persons affected by the court's increasingly crowded docket. Counsel must take responsibility for the obligations to which he committed and get the work done by the deadline. Counsel had notice from the district court that further extensions were no option,

12

after being given almost three months to respond from the date on which defendants filed their motions for summary judgment. Mr. Tietig -- not the district court -- was in the best position to fix the problem. Deadlines are not meant to be aspirational; counsel must not treat the goodwill of the court as a sign that, as long as counsel tries to act, he has carte blanche permission to perform when he desires.

A district court must be able to exercise its managerial power to maintain control over its docket. See In re Air Crash Disaster at Florida Everglades on Dec. 29, 549 F.2d 1006, 1012 (5th Cir. 1977). This power is necessary for the court to administer effective justice and prevent congestion.

It is true that plaintiff Young may have been harmed by his counsel's inability to meet deadlines in this case. But, the Supreme Court has said that clients are to be held accountable for the acts and omissions of their attorneys:

> [Plaintiff] voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 113 S.Ct. 1489, 1499, 507 U.S. 380, 396-97 (1993) (quotations and citations omitted).

13

We have reviewed all issues raised on appeal, and we find no reversible error. Thus, in all matters, the district court's decisions are affirmed.[3]

AFFIRMED.

---

[3]We also deny the plaintiff's motion to disqualify the City's attorneys.