[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 06, 2011
JOHN LEY
CLERK

_____

No. 09-15537
Non-Argument Calendar

_____

D. C. Docket No. 06-02654-CV-CAP-1

ROBERT WORLEY,

                                                        Plaintiff-Appellant,

versus

CITY OF LILBURN,
CHIEF OF POLICE RONALD HOUCK,
in his official and individual capacity,

                                                        Defendants-Appellees,

CHIEF OF POLICE JOHN DAVIDSON, etc.,

                                                        Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 6, 2011)

Before HULL, MARCUS and MARTIN, Circuit Judges.

PER CURIAM:

Robert Worley, a lieutenant with the Police Department for the City of Lilburn, Georgia, appeals the district court's order granting summary judgment in favor of the City of Lilburn ("the City") and its former police chief, Ronald Houck (collectively "the Defendants"), in his retaliation suit brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. §§ 1981 and 1983.[1] On appeal, Worley argues that: (1) the district court erred in granting summary judgment on his Title VII and § 1981 claims because the court incorrectly found that a performance evaluation of Worley containing some negative comments and a reassignment to work on the Police Department's Operations Manual ("DOM") were not adverse actions for purposes of making a prima facie case of retaliation; (2) the district court erred in granting summary judgment on his First Amendment retaliation claim, brought pursuant to § 1983, because the district court incorrectly found that Houck was entitled to qualified immunity; and (3) the district court abused its discretion by failing to consider arguments and evidence he introduced for the first time in his objections to a magistrate judge's report and

---

[1] While before the district court, Worley dismissed his claim against the current Lilburn Chief of Police, John Davidson. In addition, Worley has not raised on appeal any argument regarding the district court's grant of summary judgment in favor of the City on his § 1981 and First Amendment claims, which he conceded below were meritless. Because Worley did not raise these issues in his initial appellate brief, he has abandoned these arguments. See In re Egidi, 571 F.3d 1156, 1163 (11th Cir. 2009) (holding that "[a]rguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived.").

2

recommendation ("R&R") regarding the effect his reassignment to work on the DOM had on his ability to earn overtime pay. After thorough review, we affirm.

We review a district court's grant of summary judgment de novo. Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law. Fed.R.Civ.P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In reviewing orders granting summary judgment, we resolve all reasonable doubts about the facts in favor of the non-movant. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). However, "[a] mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." Young v. City of Palm Bay, 358 F.3d 859, 860 (11th Cir. 2004). We may affirm the district court's grant of summary judgment on any ground, regardless of whether the ground was addressed and relied upon by the district court. Cuddeback v. Florida Bd. of Educ., 381 F.3d 1230, 1235 (11th Cir. 2004). We review a district court's treatment of a magistrate's R&R for abuse of discretion. Stephens v. Tolbert, 471 F.3d 1173, 1175 (11th Cir. 2006). Similarly, we review a district court's decision not to consider arguments that were

3

not raised before a magistrate for abuse of discretion. <u>Williams v. McNeil</u>, 557 F.3d 1287, 1290-91 (11th Cir.), <u>cert. denied</u>, 129 S.Ct. 2747 (2009).

First, we are unpersuaded that the district court erred in granting summary judgment on Worley's Title VII and § 1981 retaliation claims. Title VII of the Civil Rights Act of 1964 forbids employment discrimination against "any individual" based on that individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The anti-retaliation provision in Title VII forbids an employer from "discriminat[ing] against" an employee because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. § 2000e-3(a).

Section 1981, U.S. Code Title 42, also prohibits retaliation based on race, even though the statute is silent on that cause of action. <u>CBOCS West v. Humphries</u>, 553 U.S. 442, 457 (2008). The elements required to establish retaliation claims under § 1981 are the same as those required for Title VII claims. <u>See</u> <u>Goldsmith v. Bagby Elevator Co.</u>, 513 F.3d 1261, 1277 (11th Cir. 2008) (applying the same three-part test to retaliation claims under § 1981 and Title VII); <u>see also</u> <u>Standard v. A.B.E.L. Servs., Inc.</u>, 161 F.3d 1318, 1330 (11th Cir. 1998) (noting that claims under § 1981 are analyzed under the Title VII framework).

4

In reviewing Title VII claims supported by circumstantial evidence, we use a three-step burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Crawford v. Carroll, 529 F.3d 961, 975-76 (11th Cir. 2008). The burden is first on the plaintiff to establish sufficient evidence of a prima facie case of retaliation. McDonnell Douglas, 411 U.S. at 802.

A plaintiff may establish a prima facie case of retaliation by presenting evidence that (1) he engaged in statutorily protected expression, (2) the employer took action that would have been materially adverse to a reasonable employee, and (3) there was some causal relation between the two events. Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001).

In order to satisfy the second prong, the Supreme Court has explained that a plaintiff need only show a materially adverse action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quotations omitted) (addressing Title VII retaliation claim). The Court clarified though that the acts must be material and significant and not trivial. Id. We have recognized Burlington to hold that "the type of employer conduct considered actionable has been broadened from that which adversely affects the plaintiff's conditions of employment or employment status to that which has a

5

materially adverse effect on the plaintiff, irrespective of whether it is employment or workplace-related." Crawford, 529 F.3d at 973. Furthermore, we noted that "the adverse employment action standard previously applied in this circuit to Title VII retaliation claims is more stringent than the 'materially adverse' standard announced in Burlington," and that Burlington "strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse' to him and thus constitute adverse employment actions." Id. at 973-74 & n.13.

In Burlington, the Supreme Court noted that not every job reassignment is automatically actionable because "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances," as some jobs may be more desirable than others. Burlington, 548 U.S. at 70-71 (quotation omitted). The plaintiff in Burlington was reassigned from her job working as a forklift operator to a job she had previously held working as a "track laborer." Id. at 57-58. The Court concluded that, where the evidence showed that the plaintiff's reassignment consisted of duties that were "more arduous and dirtier" and the job was considered to be less prestigious and less desirable, a reasonable jury could

6

conclude that the reassignment of responsibilities was materially adverse to a reasonable employee. Id. at 71 (quotation omitted) (noting that the prior job required more qualifications, which is an indication of prestige).

In Crawford, we held that a plaintiff suffered a materially adverse action in the form of an unfavorable performance review that affected her eligibility for a merit pay increase because the employer's conduct "clearly might deter a reasonable employee from pursuing a pending charge of discrimination or making a new one." 529 F.3d at 974. Notably, the evidence in Crawford showed that, as a result of the rating the plaintiff's employer gave her on an evaluation, she did not receive a merit increase in her salary. Id. at 973.

Under the McDonnell Douglas burden-shifting framework, once a plaintiff has established a prima facie case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the challenged employment action. McDonnell Douglas, 411 U.S. at 802. When the employer meets its burden, the plaintiff may then demonstrate that the employer's reasons are a "pretext for prohibited retaliatory conduct." Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 n.6 (11th Cir. 2000). A legitimate nondiscriminatory reason proffered by the employer is not a pretext for prohibited conduct unless it is shown that the reason was false and that the real reason was impermissible

retaliation or discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993). If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot merely recast the reason, but must meet it "head on and rebut it." Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). Conclusory allegations or unsupported assertions of discrimination, without more, "are not sufficient to raise an inference of pretext." Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir. 1996) (quotation omitted).

In this case, regardless of whether, as the district court found, Worley's performance evaluation and temporary transfer to work on the DOM constituted adverse actions, Worley has failed to show that the legitimate non-discriminatory reasons proffered by Houck were a pretext for prohibited retaliatory conduct. Notably, Worley has not shown that the reasons Houck provided for Worley's evaluation grades and reassignment -- namely, complaints from other officers and Worley's prior experience working on the DOM -- were false. Accordingly, the Defendants were entitled to summary judgment on Worley's Title VII and § 1981 claims, and we affirm as to this issue, albeit for a different reason than the district court gave.

We also reject Worley's argument that the district court erred in granting summary judgment on his First Amendment retaliation claim. To prevail on a First

8

Amendment retaliation claim under the commonly accepted formulation, "a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005). "In the employment context, the required adverse action in a retaliation claim is an 'adverse employment action.'" Id. at 1252.

A complained-of action constitutes an adverse employment action in a First Amendment retaliation case if the alleged employment action would likely chill the exercise of constitutionally protected speech. Akins v. Fulton Cnty., 420 F.3d 1293, 1300 (11th Cir. 2005). The complained-of action must also involve an important condition of employment. "Thus, if an employer's conduct negatively affects an employee's salary, title, position, or job duties, that conduct constitutes an adverse employment action." Id. In Akins, we held that unwarranted reprimands, a negative work evaluation, threat of job loss through dissolution of the plaintiff's division, threat of suspension without pay, removal of job duties, and exclusion from meetings did not constitute adverse employment actions, either singly or when considered in the aggregate. Id. at 1301-02.

9

"Qualified immunity protects municipal officers from liability in § 1983 actions as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Lewis v. City of West Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009) (quotation omitted), cert. denied, 130 S.Ct. 1503 (2010). "To receive qualified immunity, the officer must first show that he acted within his discretionary authority." Id. The applicability of qualified immunity is subject to a two-part test, which asks whether the officer's conduct amounted to a constitutional violation, and whether the right violated was clearly established at the time of the violation. Id. The order of the inquiry is fluid, and we may address the two issues in either order. Id.

"To defeat a defendant's claim to qualified immunity, a plaintiff must show that a reasonable person in the defendant's position would have been on notice that his actions violated clearly-established law." Maggio v. Sipple, 211 F.3d 1346, 1354 (11th Cir. 2000).

> For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law.

Id. (quotations omitted). Because the analysis of First Amendment retaliation claims involves intensely fact-specific legal determinations, "a defendant in a First

10

Amendment suit will only rarely be on notice that his actions are unlawful." Id. (quotation omitted).

Even if a plaintiff presents a factual question as to whether he was retaliated against because of constitutionally protected speech, a defendant may still obtain summary judgment through the affirmative defense of qualified immunity by showing that the defendant acted with both lawful and unlawful motivations and pre-existing law did not dictate that the merits of the case must be decided in the plaintiff's favor. Foy v. Holston, 94 F.3d 1528, 1535 (11th Cir. 1996). Thus, a "defendant is entitled to qualified immunity under the Foy rationale only where, among other things, the record indisputably establishes that the defendant in fact was motivated, at least in part, by lawful considerations." Stanley v. City of Dalton, 219 F.3d 1280, 1296 (11th Cir. 2000). In Stanley, we held that a police chief was entitled to a defense of qualified immunity because the record showed that the police chief was motivated, at least in part, to terminate the plaintiff police officer's employment based on lawful considerations involving the officer's prior disciplinary incidents. Id. at 1296-97.

Here, the district court correctly found that Houck could avail himself of a qualified immunity defense. Worley cannot show that he had a clearly established right not to receive an unfavorable performance evaluation that still resulted in a

raise or not to be reassigned to work he had previously done, because it was not clearly established at the time Houck committed these acts that they constituted adverse employment actions necessary for a retaliation suit. Moreover, the record indisputably establishes that Houck was motivated to give Worley his performance evaluation and reassignment, at least in part, by lawful considerations, and pre-existing law did not dictate that the merits of the case must be decided in the Worley's favor.

Finally, we find no merit in Worley's claim that the district court abused its discretion in failing to consider evidence presented for the first time in Worley's objections to the magistrate's R&R. In Williams, we noted that "a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge." 557 F.3d at 1292. Therefore, we held that the district court did not abuse its discretion in refusing to consider a new argument raised by a § 2254 petitioner in his objections to the magistrate's R&R. In finding that the district court did not abuse its discretion, we noted that "to require a district court to consider evidence not previously presented to the magistrate judge would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court." Id. (quotation and alteration omitted).

As applied here, the district court did not abuse its discretion in refusing to consider evidence and arguments that Worley advanced for the first time in his objections to the magistrate's R&R. As we've held, the district court had the discretion to decline to consider the arguments not presented to the magistrate judge, and it properly exercised this discretion here. See id. Furthermore, Worley has advanced no reason why he could not have discovered or presented his argument regarding overtime pay to the magistrate judge because the argument was based on his personal knowledge, and the magistrate judge allowed him to supplement his response to the Defendants' summary judgment motion eight times. Cf. Young, 358 F.3d at 863-64 (holding that a district court did not abuse its discretion by denying a counseled plaintiff's fifth extension to file responses to the defendant's motion for summary judgment in part because previous extensions had been granted).

**AFFIRMED.**