[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14014
Non-Argument Calendar
_____

D.C. Docket No. 2:15-cv-00332-MHT-GMB

BOOTH T. JAMES, III,

Plaintiff-Appellant,

versus

MONTGOMERY REGIONAL AIRPORT AUTHORITY,
PHIL PERRY,
Airport Executive Director,
WILLIAM HOWELL,
Airport Chief of Police,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(April 10, 2018)

Before MARCUS, JULIE CARNES and HULL, Circuit Judges.

PER CURIAM:

Booth James, III, proceeding pro se, appeals from the district court's order granting summary judgment to the Montgomery Regional Airport Authority ("the Airport"), William Howell, and Phil Perry (collectively, the "Defendants") on his complaint for retaliation, filed pursuant to 42 U.S.C. § 1983.  On appeal, James argues that the district court erred because he had acted as a whistleblower in exercising his First Amendment rights, the Defendants had not shown any policy he had violated to warrant being fired, and the Defendants had created a hostile work environment.  After thorough review, we affirm.

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmovant.  Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002).  Summary judgment is proper when the movant proves that no genuine dispute exists as to any material fact and it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The movant also may carry its summary judgment burden by showing an absence of evidence to support the nonmovant's case.  Celotex, 477 U.S. at 325.  In reviewing a grant of summary judgment, we resolve all reasonable doubts about the facts in favor of the nonmovant.  Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).  However, a "mere scintilla" of evidence in support of the nonmovant will not overcome a summary judgment motion.  Young v. City of Palm Bay, 358 F.3d 859, 860 (11th Cir. 2004).

2

"While we read briefs filed by pro se litigants liberally, issues not briefed on appeal by a pro se litigant are deemed abandoned." Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) (citation omitted). We will not act as de facto counsel for pro se parties or rewrite a deficient pleading. GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998), overruled in part on other grounds as recognized in Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010). An appellant may abandon a claim when he makes only passing references to it or raises it in a perfunctory manner without supporting arguments. See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 680 (11th Cir. 2014).

In order to prevail on a claim of retaliation by a government employer for alleged constitutionally protected speech under 42 U.S.C. § 1983, the employee must show that: (1) the speech involved a matter of public concern; (2) the employee's free speech interests outweigh the employer's business interests; and (3) the speech played a substantial role in the adverse employment action. Cook v. Gwinnett Cty. Sch. Dist., 414 F.3d 1313, 1318 (11th Cir. 2005). The employer then has the burden of proving by a preponderance of the evidence that it would have made the same decision absent the protected speech. Id. A public employee's speech is not protected when his statements are made pursuant to his official duties. Garcetti v. Ceballos, 547 U.S. 410, 421 (2006). Accordingly, in considering the first prong of the First Amendment analysis, we must determine

3

whether: (1) the employee spoke as an employee or as a citizen; and (2) the speech addressed an issue relating to the mission of the employer or a matter of public concern. Boyce v. Andrew, 510 F.3d 1333, 1342 (11th Cir. 2007).

In determining whether speech is made as an employee or as a citizen, we have held that internal memoranda and complaints about employees' ordinary roles and duties are not protected speech under the First Amendment. Alves v. Bd. of Regents of the Univ. Sys. of Ga., 804 F.3d 1149, 1164-65 (11th Cir. 2015); Boyce, 510 F.3d at 1342-44. A subject of public concern relates to a matter of political, social, or other concern to the community. Watkins v. Bowden, 105 F.3d 1344, 1353 (11th Cir. 1997). In determining whether an employee's speech relates to an issue of public concern, a court must examine the content, form, and context of a given statement, as revealed by the record as whole. Boyce, 510 F.3d at 1343. An employee may not transform a personal grievance into a matter of public concern by invoking the public's interest in the way the institution is run. Id. at 1344. That the information may be of general interest to the public does not necessarily make it a "public concern" for First Amendment purposes. Id. Rather, the relevant inquiry is whether the purpose of the speech was to raise issues of public concern or to further the employee's own private interest. Watkins, 105 F.3d at 1353.

If an employee establishes the threshold element that his speech was protected by the First Amendment, we then balance the employee's interest in the

4

protected speech against the employer's interest in regulating its workplace and efficiently providing services. Mitchell v. Hillsborough Cnty., 468 F.3d 1276, 1282 (11th Cir. 2006). In doing so, we have noted that, without the First Amendment's protection, a government employer needs no overriding justification to fire an employee, and an employee's insulting speech, even where it touches on a matter of public concern, does not outweigh an employer's interest in preventing disruption. Id. at 1287-88.

According to the summary judgment record in this case, James worked for the Defendants for approximately 15 years as a Third Shift Police Supervisor when he observed misconduct concerning the evidence impound of the Transportation Security Administration ("TSA"). After discussing these concerns with his supervisors and others, James sent a grievance letter to the Airport's Board of Directors, detailing issues about public safety and falsified misconduct within the Airport Police Department. James claims that, thereafter, he was fired for exercising his First Amendment rights in acting as a whistleblower.

The record reveals, however, that the district court did not err in granting summary judgment to the Defendants on James's retaliation claim. As for the first prong of the First Amendment test, the undisputed evidence demonstrates that James spoke as an employee in making his complaints. Garcetti, 547 U.S. at 421. James testified that his letter, which was never made public, was an internal

grievance he wrote in hopes of addressing issues with his employment in-house, and it was his only complaint to the Board.  While James mentioned issues that could conceivably be matters of public concern -- including items going missing from the Airport's impound, improperly altered impound logs, and his efforts to train other officers and maintain airport security in his letter -- he confirmed that he did so in an effort to address his unsatisfactory working conditions.  Because James's complaints were private grievances submitted to his employers about his working conditions, his speech was made as an employee, even if he now claims that he wrote his letter in the public interest.  Alves, 804 F.3d at 1164-65; Boyce, 510 F.3d at 1343-44.  Thus, James's speech was not protected by the First Amendment, and he cannot establish the threshold issue for a § 1983 claim.

But even if James had established that his speech was made as a citizen and raised an issue of public concern, summary judgment would still have been proper. As the record reveals, James could not demonstrate that his interest in his speech was outweighed by the Airport's interest in regulating its workplace and efficiently providing services.  Mitchell, 468 F.3d at 1287-88.  James's letter was filled with insults -- some racial and misogynistic -- as well as repeated assertions that he believed his coworkers would kill him.  In a later deposition, James called his supervisor a "house negro" and again said he believed his coworkers would kill him.  As a result, even if James had raised issues of public concern in his letter, the

6

Airport would still have been within its discretion to take disciplinary action against him to prevent further workplace disruption, particularly since he was an armed police officer who continued to believe that he would be murdered. Id. at 1288.  As for James's argument that the Airport could not have fired him without providing a copy of a conduct policy he violated, the Airport needed no overriding justification to fire him since, as we've said, his speech invoked no First Amendment protection. Id. at 1287.

To the extent James has appealed from the district court's earlier dismissal without prejudice of his Title VII claims (as opposed to the court's treatment of his retaliation claim), we find no error.  As the record reflects, the district court informed James that it was dismissing his claims without prejudice because, although he may have stated viable Title VII claims based on his letter, he failed to attach his letter to his complaint.  The district court then dismissed James's Title VII claims without prejudice, instructing him that, if he wanted to pursue those claims, he needed to seek leave to file a new complaint with additional factual allegations supporting them.  James declined to do so, and has identified no error in the district court's dismissal of his Title VII claims without prejudice. See Bank v. Pitt, 928 F.2d 1108, 1112 (11th Cir.1991) (noting that a district court can dismiss a claim without prejudice where a more carefully drafted complaint might state a claim, so long as the pro se plaintiff is given at least one chance to amend

7

the complaint before the district court dismisses the action with prejudice), overruled in part on other grounds by Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002) (en banc) (addressing counseled parties).

Moreover, James has not meaningfully raised his Title VII arguments on appeal. See Timson, 518 F.3d at 874. While he makes passing references to a hostile work environment in his brief, he does not address the Title VII legal framework, explain whether his claim was based on discrimination or retaliation, or cite the factual allegations that resulted in such an environment. See Sapuppo, 739 F.3d at 680. On this record, James has abandoned his Title VII issues on appeal. See Timson, 518 F.3d at 874. Finally, as for James's arguments about the authenticity of the employee conduct handbook and lost and found policy, he does not explain how the documents pertain to his claims.

**AFFIRMED**.