[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 20-10155

Non-Argument Calendar

_____

TAQWA SIDDEEQ,

Plaintiff-Appellant,

*versus*

DEKALB COUNTY, GA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:17-cv-01327-SCJ

_____

Before JILL PRYOR, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

Taqwa Siddeeq, proceeding *pro se*, appeals the district court's grant of summary judgment in favor of his former employer DeKalb County, Georgia ("the County") on his religious discrimination and retaliation claims. As an initial matter, Siddeeq argues that the district court abused its discretion by denying his belated motion to resubmit his response in opposition to the County's motion for summary judgment, which he filed after the County filed its reply to Siddeeq's initial response in opposition to the motion for summary judgment. Further, Siddeeq contends that the district court erred in granting summary judgment to the County on his religious discrimination claim after erroneously concluding that he failed to identify a valid comparator group, and therefore did not plead a *prima facie* case of discrimination. With respect to his retaliation claim, Siddeeq argues that the district court erred in determining that the temporal proximity between his protected activity and the materially adverse employment actions was too attenuated to establish causation. [1]

---

[1] Siddeeq raises a bevy of other arguments on appeal that we do not reach. For instance, Siddeeq contends that the County's counsel advised him that he did not need to file certain discovery documents, and that his reliance on that advice prejudiced his defense. However, because he did not raise this argument below, instead introducing it for the first time in his "statement of the issues" and then failing to expound his argument beyond a conclusory

After review, we affirm.

## I.      Background

In 2003, Siddeeq, a practicing Muslim, founded Neighborhood Works Incorporated ("NWI"), a nonprofit seeking to provide affordable housing to low-income families in Siddeeq's community. Siddeeq served as NWI's executive director from its founding until September 2010. In 2004, NWI became a Community Housing Development Organization ("CHDO") with the State of Georgia, which means that it began receiving government funding for "home-assisted activities." Sometime in 2009, NWI sought to obtain funding as a CHDO from the County for a housing project.

Soon after, Siddeeq applied for a position with the County in the DeKalb Community Development Department (the "Department"). During the interview, Melvia Richards, the Department's Housing Manager, told Siddeeq that he "would have to disassociate [him]self completely" from NWI as a condition of

---

statement, he has abandoned it. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014); *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331–32 (11th Cir. 2004). Siddeeq has also abandoned any First Amendment "failure to accommodate" and hostile work environment claims by failing to assert these claims in his amended complaint or brief them in response to the County's motion for summary judgment. *See id.* Finally, we note that Siddeeq first raised his freedom-of-association claim in his objection to the magistrate judge's recommendation that the district court grant summary judgment in favor of the County, thereby waiving it. *See Williams v. McNeil*, 557 F.3d 1287, 1290–91 (11th Cir. 2009).

employment, prompting Siddeeq to withdraw from consideration for the position.

Christine Morris, the Director of the Department, then contacted Siddeeq and assured him that not only would he not need to dissociate from NWI, but that his job would require providing technical assistance to NWI and other DeKalb CHDOs. Siddeeq reapplied and, on September 27, 2010, was hired as a Housing Specialist in the Department.   Because the Department paid Siddeeq's salary using Department of Housing and Urban Development ("HUD") grant funds, he was subject to federal and local rules regarding conflicts of interest.[2]   That same month,

---

[2] In relevant part, HUD's conflict of interest rules provide that:

> No persons [who are . . . employee[s], agent[s], consultant[s], officer[s], or elected official[s] or appointed official[s] of the participating jurisdiction, State recipient, or subrecipient which are receiving HOME funds] who exercise or have exercised any functions or responsibilities with respect to activities assisted by HOME funds or who are in a position to participate in a decision-making process or gain inside information with regard to these activities may obtain a financial interest or financial benefit from a HOME-assisted activity, or have a financial interest in any contract, subcontract, or agreement with respect to the HOME-assisted activity, or the proceeds from such activity, either for themselves or those with whom they have business or immediate family ties, during their tenure or for one year thereafter.  Immediate family ties include (whether by blood, marriage or adoption) the spouse, parent (including a stepparent), child (including a stepchild), brother, sister (including a stepbrother or stepsister), grandparent, grandchild, and in-laws of a covered person.

Siddeeq resigned as the executive director of NWI in order to avoid having any "financial interest" in its dealings with Department. *See* 24 C.F.R. § 92.356(b). Siddeeq claims that, at the time of his hiring, he was the only Muslim in the entire Department, and that his supervisors were aware of his faith.

In 2011, the County audited NWI and discovered that Siddeeq was a creditor of the organization and continued to have a financial interest in it—indeed, NWI owed Siddeeq between $60,000–100,000, which Siddeeq had not disclosed when the County hired him.

In September 2012, Siddeeq's supervisor Christine Morris instructed Siddeeq to cease all "business transactions or communications with" NWI within 30 days to avoid an apparent conflict of interest, and later reissued that instruction in November. Siddeeq contends that Morris also prohibited him from volunteering with NWI. Undeterred, the next month Siddeeq

---

24 C.F.R. § 92.356(b)–(c). Likewise, in relevant part, the DeKalb County personnel code prohibits employees from:

> (1) Engag[ing] in any business or transaction or hav[ing] a financial interest or other personal interest, direct or indirect, which is incompatible with the proper discharge of official duties or which would tend to impair independence of judgment or action in the performance of official duties . . . (4) Participat[ing] in the negotiation or the making of any contract with any business or entity in which the employee has a financial interest.

DeKalb Cty. Code § 20-20(1)-(4).

inquired with NWI about an invoice payment, prompting Morris to suspend, and ultimately terminate, him in late December 2012 and January 2013, respectively. Siddeeq successfully appealed his termination, and, in July 2013, he was reinstated, but was placed in a different position as a Senior Center Manager at the DeKalb Atlanta Senior Center—although the Department continued to pay his salary using HUD funds. On July 24, 2013, the day before starting his new position, Siddeeq filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), complaining of religious discrimination, prior suspensions he experienced, his first termination, and his reassignment to the Senior Center upon his reinstatement.

In September 2013, Morris forwarded to all County employees an invitation to attend a prospective homeowner information session at Habitat for Humanity, a CHDO receiving HUD funds.[3] Approximately seven months later, on April 11, 2014, Siddeeq e-mailed Morris, requesting that she lift what Siddeeq perceived as a prohibition against his volunteering from CHDOs receiving funding from the County. She denied his request in writing, noting that Siddeeq was still an active employee with the Department and that he retained a financial interest in NWI—the $60,000-$100,000 that the organization owed him—and therefore he still had a conflict of interest. Morris explicitly warned Siddeeq

_____

[3] According to Siddeeq, Habitat for Humanity is a Christian organization.

that "[v]iolations of this directive will lead to disciplinary actions up to and including termination of employment."

Nevertheless, on August 19, 2014, Siddeeq, acting as a representative of NWI, attended a workshop hosted by an independent agency funded by HUD. Upon learning of Siddeeq's actions, Ms. Morris sent him a letter indicating the Department's intent to terminate him for insubordination and failure to comply with directions to avoid a conflict of interest. Siddeeq unsuccessfully appealed his termination. He then filed a second complaint with the EEOC, alleging religious discrimination and retaliation. The EEOC, finding that Siddeeq had no cause to assert his claims, dismissed the complaint and issued Siddeeq a right to sue letter on January 19, 2017.

Siddeeq then filed the underlying civil rights complaint against the County, alleging that the County: (1) discriminated against him on the basis of his Muslim faith; (2) created and subjected him to a hostile work environment on the basis of his religious exercise and for filing an EEOC complaint; and (3) fired him in retaliation for his filing an EEOC complaint. After discovery, the County moved for summary judgment.

The district court clerk sent Siddeeq a notice, informing him of the County's motion for summary judgment and the deadline for his response, and advising him that he must designate, by sworn affidavit or other materials, specific facts showing genuine issues for trial. Additionally, the magistrate judge issued an order explaining to Siddeeq what his response should include, and that

the failure to respond to each of the numbered facts in the County's statement of undisputed material facts would result in those facts being accepted pursuant to the federal and local rules. *See* Fed. R. Civ. P. 56; N.D. Ga. Civ. R. 56.1.

On June 14, Siddeeq filed a motion for additional time to respond to the County's motion for summary judgment because his father was seriously ill, and the magistrate judge granted him a five-week extension until July 31, cautioning Siddeeq that he would not receive any further extensions. On July 29, Siddeeq filed for another extension, citing the recent death of his father, and the magistrate judge granted the extension until August 21. The magistrate judge stated that no further extensions would be granted.

After Siddeeq finally submitted his response in opposition to the motion for summary judgment on August 21, the County argued that Siddeeq failed to respond to its statement of undisputed material facts. Siddeeq then filed a motion seeking permission to resubmit his response to the County's motion for summary judgment.

Next, the magistrate judge issued a report and recommendation ("R&R") recommending that the district court grant the County's motion for summary judgment. Because Siddeeq failed to respond to the County's statement of undisputed material facts in accordance with the federal and local rules, the magistrate judge deemed admitted most of the County's statement of undisputed material facts. Relatedly, the magistrate judge

recommended denying Siddeeq's request to resubmit his response, explaining that Siddeeq did not have good cause to resubmit his response because he had previously been warned about the requirements and, due to the two extensions already granted to him, received a total of 82 days to prepare a response.

With regard to Siddeeq's religious discrimination claim, the magistrate judge found that Siddeeq failed to point to any direct evidence of discrimination, and that the record evidence did not contain any. The magistrate judge also concluded that none of the purported comparators Siddeeq identified were similarly situated.

Turning to Siddeeq's retaliation claim, the magistrate judge found that Siddeeq's filing of his 2013 EEOC complaint constituted protected activity, and that he faced adverse employment actions in April 2014, when he was allegedly prohibited from volunteering with CHDOs, and again in September 2014, when he was terminated. However, the magistrate judge concluded that Siddeeq failed to present sufficient evidence of a causal connection between his filing of the EEOC complaint and those adverse events due to the temporal gap between them. Finally, the magistrate judge recommended the dismissal of Siddeeq's claim of a hostile work environment.

Siddeeq raised five objections to the magistrate judge's R&R, including: (1) that the magistrate judge considered key evidence of retaliation out of context and failed to consider the one-year waiting period under 24 C.F.R. § 92.356(b); (2) that the magistrate judge overlooked the *per se* retaliatory nature of the

restrictions imposed on him by the County; and (3) that the magistrate judge's comment that no further extensions would be granted denied him the option to request an extension of time.

The district court adopted the magistrate judge's report and recommendation, overruled Siddeeq's objections, and granted the County's motion for summary judgment. Siddeeq timely appealed.

## II.    Analysis

### A. Siddeeq's motion to resubmit his response to the County's motion for summary judgment

On appeal, Siddeeq argues that the district court erred in denying his motion to resubmit his response in opposition to the County's motion for summary judgment. He maintains that his response in opposition to the motion for summary judgment was subpar and failed to comply with all of the rules because he was grieving the death of his father, which he contends constituted good cause for the district court to grant his subsequent motion to resubmit his response.

We review the district court's decision to deny Siddeeq's request to resubmit his response for an abuse of discretion. *Young v. City of Palm Bay*, 358 F.3d 859, 863 (11th Cir. 2004). Here, the district court did not abuse its discretion in denying Siddeeq's request to resubmit his response to the County's motion for summary judgment because the magistrate judge twice granted Siddeeq an extension, giving him a total of 82 days to respond to

the motion for summary judgment.[4]  Additionally, the magistrate judge had issued an order explaining to Siddeeq the requirements of Federal Rule of Civil Procedure 56 and Local Rule 56.1, including that if he failed to respond to the County's statement of undisputed material facts, those facts may be accepted as true.[5] Yet, Siddeeq filed a response that failed to comply with the rules and did not respond to the County's statement of undisputed facts. Once the County asserted in its reply that Siddeeq's response failed to comply with the rules, and, therefore, that the district court was required to accept the County's factual allegations as true, Siddeeq filed his motion to resubmit his response—over a month after the filing of his initial response.

---

[4] First, Siddeeq requested a five-week extension to file his response so that he could visit his father, who was very ill.  The magistrate judge granted this extension, but cautioned that no additional extensions would be granted. Nevertheless, when Siddeeq's father passed away and he sought an additional three-week extension, the magistrate granted Siddeeq's motion, but stated in the order that "[n]o further extensions will be granted."

[5] A party has 21 days to respond to a motion for summary judgment.  N.D. Ga. Civ. R. 56.1(A).  The Local Rules also provide that the response "shall include" "a response to the movant's statement of undisputed facts," containing "individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts." *Id.* Civ. R. 56.1(B)(2).  The rule cautions that the district court "will deem . . . the movant's facts as admitted unless," among other things, the respondent "directly refutes the movant's facts with concise responses supported by specific citations to evidence." *Id.*

Although we give liberal construction to *pro se* pleadings, "we nevertheless . . . require them to conform to procedural rules." *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (quotation omitted). Siddeeq knew the specific consequences that would flow from failing to comply with Rule 56.1, and had 82 days to avoid incurring them—despite the personal loss he suffered during that time. Under these circumstances, the district court did not abuse its discretion in denying Siddeeq's motion to resubmit his response brief. *See Young*, 358 F.3d at 864 (explaining that "[a] district court must be able to exercise its managerial power to maintain control over its docket," and that, in deciding whether to grant extensions of time, "[t]he district court must consider the equities not only to plaintiff . . . , but also to the opposing parties and counsel, as well as to the public, including those persons affected by the court's increasingly crowded docket").

B. Whether the district court erred in granting summary judgment to the County on Siddeeq's substantive claims

"We *de novo* review a district court's grant of summary judgment," asking whether the evidence, viewed in the light most favorable to the nonmoving party, entitles the moving party to judgment as a matter of law. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1263–64 (11th Cir. 2010). We may affirm on any ground supported by the record. *Id.* at 1264. Crucially, the leniency we afford *pro se* litigants by construing their pleadings liberally does not permit a court "to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading to sustain an

action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quotation omitted).

When an appellant, including a *pro se* appellant, fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he abandons any challenge to it. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).[6]   An appellant may also abandon a claim by raising it for the first time in a reply brief. *Sapuppo*, 739 F.3d at 683.  Similarly, a party may waive an issue by first raising it late in the proceedings before the district court. *Thomas v. Bryant*, 614 F.3d 1288, 1305–06 (11th Cir. 2010).  Generally, we will not consider an issue raised for the first time on appeal. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331–32 (11th Cir. 2004).

Moreover, a party failing to object to a magistrate judge's proposed findings or recommendations contained in a R&R "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object."  11th Cir. R. 3-1; *see also Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d

---

[6] An appellant also abandons a claim by: (a) making only passing references to it, (b) raising it in a perfunctory manner without supporting arguments and authority, (c) referring to it only in the "statement of the case" or "summary of the argument," or (d) referring to it only in the background of his or her main arguments or burying it within those arguments. *Sapuppo*, 739 F.3d at 681.

1185, 1191 (11th Cir. 2020) (explaining that we will apply Rule 3-1 only where the party was given "clear notice" of the time period for objections and the consequences of failing to object).[7]

### i.    Siddeeq's religious discrimination claim

Siddeeq asserted that the County discriminated against him for his Muslim faith when it singled him out for his alleged conflict of interest with NWI and prohibited him from associating or communicating with any CHDO organizations.  He argues that the district court erred in concluding that he did not present a similarly situated comparator for purposes of establishing a *prima facie* case of discrimination.[8]   The County argues that Siddeeq waived any

---

[7] Rule 3-1 provides that:

> A party failing to object to a magistrate judge's finding or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice.

11th Cir. R. 3-1.

[8] Siddeeq claims that it was unreasonable for the district court to require him to identify specific individual comparators when he was the sole person subject to a prohibition on engaging in business transactions or communications with any CHDO, and that it ignored record evidence that he

challenge to this claim by failing to object to those portions of the R&R.  We agree with the County.

The district court denied Siddeeq's religious discrimination claim upon accepting the magistrate judge's findings that Siddeeq failed to identify a valid comparator and that the record did not contain direct evidence of discrimination.  While Siddeeq filed objections to the R&R, he did not object to these findings.  In fact, he stated affirmatively in his objections that he would "not invest in defending the discrimination he believes did occur," and even conceded that "the Court may have a point with respect to discrimination."  Furthermore, Siddeeq was informed of the time period to object and that "the Court of Appeals will deem waived any challenge to which there was no objection, subject to interests-of-justice plain error review" as required for Rule 3-1 to apply. *Harrigan*, 977 F.3d at 1191.  Accordingly, we consider any challenge to the district court's treatment of Siddeeq's discrimination claim waived.  11th Cir. R. 3-1.[9]    Accordingly, we affirm the district

---

presented regarding Habitat for Humanity's Christian affiliation.  Regardless, Siddeeq maintains that he identified a valid comparator group in proceedings below.  Additionally, he argues that the County failed to show similar levels of concern regarding potential conflicts of interest between its employees and Habitat for Humanity, which supports an inference of discriminatory intent.

[9] And, we find nothing in the record that suggests that plain error review is appropriate in this appeal, particularly in light of Siddeeq's concession in his objection to the R&R his claim may have been deficient.  *See Ledford v. Peeples*, 657 F.3d 1222, 1258 (11th Cir. 2011) (explaining that the plain error doctrine "rarely applies in civil cases").

16                    Opinion of the Court                    20-10155

court's grant of summary judgment on Siddeeq's discrimination claim.

### ii.    Siddeeq's retaliation claim

Next, we turn to and reject Siddeeq's argument that the district court erred by granting summary judgment to the County on his retaliation claim. We agree with the district court that Siddeeq failed to establish a *prima facie* case of retaliation because there was insufficient temporal proximity between Siddeeq's filing of the July 2013 EEOC complaint and the subsequent adverse employment actions to establish a causal relationship.

Under Title VII of the Civil Rights Act of 1964 ("Title VII"), an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice" or "has made a charge" regarding an unlawful employment practice under Title VII. 42 U.S.C. § 2000e-3(a).

When a plaintiff relies on circumstantial rather than direct evidence for a retaliation claim, we generally apply the burden shifting framework articulated in *McDonnell Douglas*.[10]  *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006). To establish a *prima facie* case of retaliation under *McDonnell Douglas*, the plaintiff must show that (1) he engaged in a statutorily protected expression, (2) he suffered a materially

---

[10] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

adverse action, and (3) there was a causal link between the adverse action and his protected expression. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260–61 (11th Cir. 2001). A materially adverse employment action is an action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotation marks omitted).

If the plaintiff presents a *prima facie* case, it creates a "presumption that the adverse action was the product of an intent to retaliate." *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009). The burden of production then shifts to the employer to rebut the presumption by articulating a legitimate, non-discriminatory reason for the employment action. *Id.* If the employer produces such a reason, the presumption is rebutted, and the plaintiff must then demonstrate that the "proffered reason was merely a pretext to mask [retaliatory] actions." *Id.*

To establish the necessary causation, a plaintiff must demonstrate that "[his] protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). "Importantly, throughout this entire process, the ultimate burden of persuasion remains on the employee." *Sims v. MVM, Inc.*, 704 F.3d 1327, 1333 (11th Cir. 2013).

The parties do not dispute that Siddeeq engaged in a protected activity when he filed his July 2013 EEOC charge or that he suffered an adverse action when his April 2014 request to

volunteer with CHDOs was denied and again in September 2014 when he was terminated.  Rather, the district court concluded that Siddeeq failed to establish a *prima facie* case because he failed to present any evidence showing a causal connection between the filing of the July 2013 EEOC complaint and the subsequent adverse actions.   Nine months passed between Siddeeq's EEOC complaint and the first adverse action, and an additional five months lapsed before he was actually fired—a total of fourteen months.  Finding a temporal connection under these circumstances would strain credulity and our precedent.  *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007 (explaining that, for purposes of establishing causation, the temporal proximity between the protected activity and the adverse actions "must be very close" and "[a] three to four month disparity" between the two was insufficient to establish causation, absent other evidence).

Hence, the district court did not err by concluding that Siddeeq failed to establish a causal relationship between his July 2013 EEOC complaint and subsequent adverse employment actions. Accordingly, because he failed to establish a *prima facie* case of retaliation, summary judgment was appropriate.[11]

---

[11] Siddeeq make[s various arguments related to why he believes that the County's stated reasons for his termination were pretextual and how he did not have a conflict of interest at the time of his termination.  Because he failed to establish a *prima facie* case of retaliation, we do not reach these arguments.

**AFFIRMED.**[12]

---

[12] Siddeeq's motion to supplement the record on appeal is DENIED.